UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HOWARD MAYO,<br><br>                Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS,<br><br>                Defendant. | CASE NO. 3:22-cv-05164-DGE<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>JUDGMENT ON THE PLEADINGS |

## I    INTRODUCTION

This matter comes before the Court on Defendant Experian Information Solutions, Inc.'s Motion for Judgment on the Pleadings.  (Dkt. No. 24.)  Plaintiff Howard Mayo opposed Defendant's motion[1] and Defendant replied.[2]  (Dkt. Nos. 28, 36.)  For the reasons stated herein, the Court GRANTS judgment on the pleadings in favor of Defendant.

---

[1] Plaintiff requests oral argument.  (Dkt. No. 38 at 1.)  The Court finds that oral argument would not be helpful to the Court's disposition of this motion and denies Plaintiff's request.  *See* LCR 7(b)(4).

[2] Plaintiff filed a surreply.  (Dkt. No. 38.)  Under Local Civil Rule 7(g), a surreply shall not exceed three pages and can be filed for the limited purpose of "request[ing] to strike material contained in

1

## II    BACKGROUND

Plaintiff sues under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

(Dkt. No. 1-4 at 10.)  Beginning November 5, 2019, Plaintiff alleges Defendant inaccurately

reported his Bank of Missouri Visa credit card as a closed account.  (*Id.*)  Plaintiff alleges

Defendant listed inaccurate information on 40 credit reports all of which were dated between

November 5, 2019 and October 26, 2020.[3]  (*Id.*)  Defendant corrected Plaintiff's Bank of

Missouri account on November 20, 2020.  (*Id.* at 57.)

During this period, Plaintiff disputed the status of his account nine times on November 5,

2019, November 22, 2019, December 11, 2019, February 27, 2020, March 12, 2020, March 19,

2020, April 14, 2020, July 12, 2020, and August 20, 2020.[4]  (*Id.* at 59.)  Plaintiff alleges

Experian forwarded Automated Dispute Verification Code (ADVC) forms to the Bank of

Missouri for each of Plaintiff's disputes.  (*Id.* at 32.)  In response, the Bank allegedly "report[ed]

Plaintiff's credit card account open and reported the status of the account 'current.'"  (*Id.* at 18.)

Plaintiff further alleges Experian should have known the account was open because Experian's

---

or attached to a reply brief."  "Extraneous argument or a surreply filed for any other reason will
not be considered."  LCR 7(g)(2).  Plaintiff's surreply is 21 pages and does not request to strike
any material.  Because Plaintiff's surreply does not comply with the Local Civil Rules, the Court
does not consider it.

[3] Plaintiff's credit reports were dated November 5, 2019, November 8, 2019, November 22, 2019,
November 24, 2019, December 11, 2019, February 6, 2020, February 9, 2020, February 18, 2020,
February 21, 2020, February 27, 2020, March 3, 2020, March 12, 2020, March 19, 2020, March
20, 2020, March 31, 2020, April 2, 2020, April 6, 2020, April 14, 2020, April 26, 2020, May 1,
2020, May 3, 2020, May 18, 2020, May 24, 2020, June 1, 2020, June 3, 2020, June 25, 2020, July
12, 2020, July 21, 2020, July 29, 2020, August 9, 2020, August 20, 2020, August 21, 2020,
September 2, 2020, September 17, 2020, September 19, 2020, September 20, 2020, October 2,
2020, October 21, 2020, October 24, 2020, and October 26, 2020.  (Dkt. No. 1-4 at 56.)

[4] In Plaintiff's proposed Second Amended Complaint, he does not allege he submitted a dispute
on July 12, 2020.  (Dkt. No. 27 at 68.)

1    "credit reports indicate[d] credit card usage on a reported[ly] 'closed' account" with various

2    percentages used, fluctuating balances, and a credit limit increase.  (*Id.* at 17.)

3          Defendant's inaccurate reporting allegedly caused Plaintiff to lose over three years[5] of

4    on-time credit card payment history on an open account (*id.* at 41) and an artificially lowered

5    credit score of 610 (*id.* at 50).  As a result, Plaintiff, a Vietnam veteran, was denied the

6    opportunity to apply for a Veteran's Home Mortgage Loan, because the application requires a

7    minimum credit score of 620.  (*Id.* at 50, 62.)  Plaintiff also alleges he suffered because the

8    inaccurate report decreased the average age of all of Plaintiff's credit accounts, worsened his

9    credit utilization ratio, and caused a loss of credit expectancy, worthiness, opportunity,

10   reputation, and capacity.  (*Id.* at 37, 39–42.)  Defendant disseminated inaccurate credit reports to

11   third parties, allegedly causing Plaintiff to be denied a Capital One Inc. Mastercard credit card on

12   February 1, 2020 and requiring him to bear a higher interest rate on his Fortiva Mastercard on

13   June 4, 2020.  (*Id.* at 51.)  Plaintiff suffered emotional distress and mental anguish as he

14   repeatedly tried to correct Defendant's error.  (*Id.* at 47.)

15         On August 4, 2020, Plaintiff sued Defendant in the Small Claims Department of the

16   District Court for Grays Harbor County.[6]  (Dkt. No. 24-1 at 2.)  Plaintiff alleged Defendant

17   willfully failed to conduct reasonable reinvestigations of his disputes and to follow reasonable

18   procedures to assure maximum possible accuracy of reports in violation of FCRA 15 U.S.C.

19

20   [5] The length of on-time credit card payment history Plaintiff accrued on his Bank of Missouri
     account is unclear from the Amended Complaint.  Plaintiff alleges it was one year (Dkt. No. 1-4
21   at 6) but also alleges three years and eleven months (*id.* at 41).  Because the Court views the facts
     in the light most favorable to Plaintiff, it assumes a history of over three years.

22   [6] Defendant asks the Court to take judicial notice of the Small Claims Complaint and Judgment in
23   *Howard Mayo v. Experian Info. Solutions, Inc.*, Case No. C-13582 (Grays Harbor Small Claims
     Dep't., Aug. 4, 2020) (Dkt. No. 24-1 at 2–3, 5–7).  (Dkt. No. 25 at 1.)  The Court takes judicial
24   notice of these court filings under Federal Rule of Evidence 201.  *See infra* Section III, A.

§ 1681(a)(1)(A) and 15 U.S.C. § 1681(e)(b).  (*Id.* at 3.)  Plaintiff presented evidence related to four of his disputes.  (*Id.*)  Plaintiff also claimed Defendant disseminated his credit report which caused Capital One Mastercard to deny him a credit card on February 1, 2020 and Credit One Mastercard to deny increasing his credit limit on April 24, 2020.[7]  (*Id.*)

On December 29, 2020, the Small Claims Court issued a "Decision on Small Claims" in Defendant's favor, holding "[i]t appears to the Court that the actions of Bank of Missouri were at fault for a wrong listing of the [inaccurate] status of the plaintiff at their Institution[.]"  (*Id.* at 6.) On February 16, 2022, Plaintiff brought this action in the Superior Court of Washington for Grays Harbor County.  (Dkt. No. 1-1 at 2.)  On March 17, 2022, Defendant removed Plaintiff's Amended Complaint (Dkt. No. 1-4 at 1–62) to this Court.  (*See* Dkt. No. 1.)  Plaintiff seeks a total of $343,000 in damages.  (Dkt. No. 1-4 at 6.)

### III     DISCUSSION

#### A.  Legal Standard for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Analysis under Federal Rule of Civil Procedure 12(c), like analysis under Federal Rule of Civil Procedure 12(b), requires "a court [to] determine whether the facts alleged in the complaint, taken as true,

---

[7] Although raised by neither party in the briefings, the Court notices Plaintiff's injuries change slightly in the current case.  Plaintiff alleges a higher interest rate was applied to his Fortiva Mastercard on June 4, 2020 (Dkt. No. 1-4 at 51) but previously alleged Credit One Mastercard denied increasing his credit limit on April 24, 2020 (Dkt. No. 24-1 at 3).  Assuming arguendo, Plaintiff alleges two separate claims for each transmission, res judicata would still preclude Plaintiff's action because each transmission arose from the same transactional nucleus of fact.  (*See infra* Section III, D. 3.)

1    entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

2    2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3

3    (N.D. Cal. Dec. 9, 2011)) (internal quotation marks omitted).

4            Generally, courts must convert a motion for judgment on the pleadings to a motion for

5    summary judgment when it relies on extrinsic matters outside the pleadings.  *See Hal Roach*

6    *Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  That said, courts

7    may consider matters subject to judicial notice under Federal Rule of Evidence 201 without

8    converting the motion to a summary judgment.  *See MGIC Indem. Corp. v. Weisman*, 803 F.2d

9    500, 504 (9th Cir. 1986) (taking judicial notice of matters of public record outside the pleadings

10   when analyzing a motion to dismiss); *see also Wild Fish Conservancy v. United States Env't*

11   *Prot. Agency*, 331 F. Supp. 3d 1210, 1217 (W.D. Wash. 2018) ("[O]n motions under Federal

12   Rules of Civil Procedure 12(b) and 12(c),] a court may consider documents outside the pleadings

13   that are matters of public record based on sources whose accuracy cannot reasonably be

14   questioned") (internal quotations omitted).  Matters of public record that may be judicially

15   noticed include pleadings, orders, and other papers filed with the court or records of

16   administrative bodies.  *See Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp.

17   2d 1224, 1233 (C.D. Cal. 2003).

18           Accordingly, this Court grants Defendant's request and takes judicial notice of the Small

19   Claims Complaint and Judgment in *Howard Mayo v. Experian Info. Solutions, Inc.*, Case No.

20   C-13582 (Grays Harbor Small Claims Dep't., Aug. 4, 2020) (Dkt. No. 24-1 at 2–3, 5–7).

21       **B.  Res Judicata**

22           Defendant raises the affirmative defense of res judicata, also known as claim preclusion.

23   When the prior judgment was issued by a state court, the federal court must apply the claim

24

1  preclusion rules of the state that rendered the underlying judgment.  *See Holcombe v. Hosmer*,

2  477 F.3d 1094, 1097 (9th Cir. 2007).

3       In Washington, "[r]es judicata—or claim preclusion—applies where a final judgment

4  previously entered and a present action are so similar that the current claim should have been

5  litigated in the former action."  *Storti v. Univ. of Washington*, 330 P.3d 159, 165 (Wash. 2014).

6  "'The doctrine of res judicata rests upon the ground that a matter which has been litigated, or on

7  which there has been an opportunity to litigate, in a former action in a court of competent

8  jurisdiction, should not be permitted to be litigated again.'"  *Marino Prop. Co. v. Port Comm'rs*

9  *of Port of Seattle*, 644 P.2d 1181, 1184–85 (Wash. 1982) (quoting *Walsh v. Wolff*, 201 P.2d 215

10 (Wash. 1949)).  A final judgment on the merits will have preclusive effect if there is identity

11 between "subject matter, cause of action, persons and parties, and the quality of the persons for

12 or against whom the claim is made."  *Matter of Recall of Fortney*, 503 P.3d 556, 566 (Wash.

13 2022) (internal quotations omitted); *see also Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F.

14 Supp. 3d 1161, 1166 (W.D. Wash. 2014) (citations omitted).

15       On the first factor, identity of subject matter, Washington courts "look to legal and

16 factual similarities."  *Matter of Recall of Fortney*, 503 P.3d at 566.  This inquiry usually overlaps

17 with the second factor—the issue of whether the cause of action or claims are also the same.

18 14A Douglas J. Ende, Washington Practice, Civil Procedure § 35:25 (3d ed. 2021).

19 Although there is no precise, mechanical test to determine whether the causes of action are the

20 same, Washington courts consider:

21       [W]hether the rights or interests established in the prior judgment would be
         destroyed or impaired by prosecution of the second action; (2) whether substantially
22       the same evidence is presented in the two actions; (3) whether the two suits involve
         infringement of the same right; and (4) whether the two suits arise out of the same
23       transactional nucleus of facts.

24

1   *Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F. Supp. 3d 1161, 1168 (W.D. Wash. 2014); *see*

2   *also Rains v. State*, 674 P.2d 165, 168 (Wash. 1982).  These "*Rains* considerations" are

3   analytical tools, but not all four must be present to bar the claim.  *Ensley v. Pitcher*, 222 P.3d 99,

4   105 (Wash. Ct. App. 2009).

5           Regarding identity of claims, preclusion applies to what was actually litigated but also "to

6   what might, or should have been litigated . . . if all part of the same claim or cause of action."

7   Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L.

8   REV. 805, 814 (1985).  "A litigant cannot justify successive actions by changing [their] theory of

9   recovery[.]"  Kathleen M. McGinnis, *Revisiting Claim and Issue Preclusion in Washington*, 90

10  WASH. L. REV. 75, 82 (2015).  In other words, courts follow the general rule "that if an action is

11  brought for part of a claim, a judgment obtained in the action precludes the plaintiff from

12  bringing a second action for the residue of the claim."  *Landry v. Luscher*, 976 P.2d 1274, 1277

13  (Wash. Ct. App. 1999).

14          **C.  The Small Claims Judgment Has Preclusive Effect**

15          Plaintiff's Small Claims case against Defendant resulted in a final judgment dismissing

16  Plaintiff's case.  The judge held:

17          It appears to the Court that the actions of Bank of Missouri were at fault for a wrong
            listing of the current status of the plaintiff at their institution.  Experian reported the
18          status as provided by Bank of Missouri.  This appears evident to the Court, for when
            the Bank of Missouri changed the plaintiff status Experian reported the change on
19          the plaintiff financial record.

20          The plaintiff has the burden of proof in such a case and the Court cannot find that
            burden has been met in this case.  The request for damages, both general and
21          punitive is denied.

22  (Dkt. No. 24-1 at 6–7.)  Thus, the judgment was both final and on the merits.

23

24

1       Further, although Plaintiff brings federal claims, the Small Claims Court had jurisdiction

2 over the matter under 15 U.S.C. § 1681p, which states, "[a]n action to enforce any liability

3 created under [the FCRA] may be brought in any appropriate United States district court . . . or

4 in any other court of competent jurisdiction[.]"  Washington Small Claims Courts have

5 nonexclusive jurisdiction over "cases for the recovery of money only if the amount claimed does

6 not exceed . . . [t]en thousand dollars in cases brought by a natural person."  Wash. Rev. Code

7 § 12.40.010(1)(a), (2).  Plaintiff sought $10,000 in damages, therefore, his case fell within the

8 proper jurisdiction of the Small Claims Department of the District Court for Grays Harbor

9 County.  (*See* Dkt. No. 24-1 at 3.)

10       Washington courts honor the preclusive effect of Small Claims proceedings, so long as a

11 litigant was permitted to appeal the decision.  *See, e.g., Landry*, 976 P.2d at 1276; *State Farm*

12 *Mut. Auto. Ins. Co. v. Avery*, 57 P.3d 300, 306 (Wash. Ct. App. 2002).  Litigants can appeal

13 small claims judgments if the amount claimed is over $250.  Wash. Rev. Code § 12.40.120.

14 Plaintiff claimed $10,000 in damages; thus, Plaintiff was permitted to appeal and the Small

15 Claims Judgment has preclusive effect.  *See* Wash. Rev. Code § 12.40.120.

16       Plaintiff argues the Small Claims case "was essentially dismissed without prejudice and

17 given leave to amend[.]"  (Dkt. No. 24-1 at 16.)  Plaintiff further argues "the first trial was

18 adjudicated conditionally as well as inappropriately," and "requests that the documentary

19 evidence from the old trial be combined with the new documentary evidence from this trial."

20 (*Id.*)  Plaintiff provides no legal or factual support for his assertions.  He appears to argue the

21 Judge did not make a final decision despite finding the Plaintiff did not meet his burden.  This is

22 not a legally sound argument.  The first action resulted in a final judgment on the merits capable

23 of having res judicata effect.

24

### D.  Identity of Persons, Subject Matter, and Claims All Favor Application of Res Judicata

1.  <u>Identity of Persons, Parties, and Quality of Persons</u>

Plaintiff is Howard Mayo, representing himself *pro se*, and Defendant is Experian Information Solutions, Inc. in both this case and the Small Claims action.  Therefore, the persons and parties are identical.  Because the parties are identical, the quality of the persons for or against whom the claim is made is also the same.  *See* Kathleen M. McGinnis, *Revisiting Claim and Issue Preclusion in Washington*, 90 WASH. L. REV. 75, 85 (2015) ("[The quality of persons] tend[s] to be paired with the analysis of identity of parties, with both yielding the same result.").

2.  <u>Identity of Subject Matter</u>

To determine whether there is identity of subject matter, the Court compares the facts and legal claims alleged in the Small Claims action and the instant case.

In Small Claims Court, Plaintiff alleged Defendant had inaccurately reported his Bank of Missouri credit card account as closed since December 2019, even though Plaintiff disputed the incorrect information four times.  (Dkt. No. 24-1 at 3.)  Plaintiff claimed Defendant's inaccurate reporting and failed reinvestigations violated FCRA provisions requiring furnishers of credit information to reasonably reinvestigate disputed entries, 15 U.S.C. § 1681i(a)(1)(A), and to follow reasonable procedures to assure maximum possible accuracy, 15 U.S.C. § 1681e(b).  (*Id.*)

In this case, Plaintiff alleges Defendant inaccurately reported his Bank of Missouri credit card account as closed from November 2019 to November 2020, even though Plaintiff disputed the incorrect information on November 5, 2019, November 22, 2019, December 11, 2019, February 27, 2020, March 12, 2020, March 19, 2020, April 14, 2020, July 12, 2020, and August 20, 2020.  (*See* Dkt. No. 24-1 at 19, 67.)  Plaintiff possesses 40 credit reports inaccurately showing his account as closed, dated between November 2019 and October 2020.  (*Id.* at 19, 64.)

1    Plaintiff claims Defendant negligently and willfully violated the FCRA nine times by failing to

2    reinvestigate disputed information as required under 15 U.S.C. § 1681i(a)(1)(A).  (*Id.* at 68–69.)

3    Plaintiff also appears to claim Defendant violated the FCRA 40 times because Plaintiff possesses

4    40 inaccurate credit reports.  (*Id.*)

5             Plaintiff argues the subject matter is not identical because his Statement of Claim in the

6    Small Claims action addressed Defendant's inaccurate reporting from December 2019 to August

7    2020, but Plaintiff now alleges Defendant inaccurately reporting his account from November

8    2019 to October 2020 before correcting its error on November 20, 2020.  (Dkt. No. 28 at 4–5.)

9    Plaintiff further argues, during the Small Claims trial he did not present the 40 inaccurate reports

10   he obtained from Defendant's website, which he now seeks to admit as evidence in the current

11   matter.  (*Id.* at 14.)  Plaintiff also asserts he raised four disputes that were unreasonably

12   reinvestigated but now raises nine disputes.  (*Id.* at 15.)  It is unclear from the pleadings which

13   disputes Plaintiff raised in the first action and which disputes are raised for the first time in this

14   case.

15            Defendant argues "[n]o amount of newly discovered credit reports from November 2019

16   to November 2020 could establish a different subject matter" given that the new reports "upon

17   which Plaintiff bases his arguments are reports from the months while the [Small Claims action]

18   was ongoing."  (Dkt. No. 36 at 3.)  These inaccurate reports were available online, but Plaintiff

19   was unaware he could access his credit reports on Defendant's website.  (Dkt. No. 28 at 14.)

20   Defendant argues the "new" reports are merely duplicative evidence available during the Small

21   Claims action.  (Dkt. No. 28 at 16–17.)  *See Turtle Island Restoration Network v. U.S. Dep't of*

22   *State*, 673 F.3d 914, 918–19 (9th Cir. 2012) (holding claim preclusion applied—despite the

23

24

1  plaintiff citing evidence in a subsequent suit unavailable in the prior suit because the evidence

2  was merely an example to support the claims already raised in the first case).

3        The Court finds there is identity of subject matter because, although Plaintiff identifies

4  new credit reports, none are material to Plaintiff's claim.  In order to make out a prima facie

5  claim under FCRA provision 15 U.S.C. § 1681e(b), "a consumer must present evidence tending

6  to show that a credit reporting agency prepared a report containing inaccurate information," from

7  which a court can infer unreasonable procedures in obtaining credit information.  *Guimond v.*

8  *Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  "The FCRA does not impose

9  strict liability, however—an agency can escape liability if it establishes that an inaccurate report

10 was generated despite the agency's following reasonable procedures."  *Id.*

11       In the Small Claims action, Plaintiff alleged Defendant inaccurately reported his Bank of

12 Missouri credit card as a closed account, which establishes a prima facie violation under 15

13 U.S.C. § 1681e(b).  The fact that Plaintiff has acquired 40 credit reports from Defendant's

14 website showing the same inaccuracy during largely the same time frame is not relevant to claim

15 preclusion.

16         3.   Identity of Causes of Action

17       Plaintiff argues the causes of action are different because he alleges "standalone

18 violations" as "Defendant committed new, independent violations" shown by Plaintiff's 40 credit

19 reports and nine reinvestigations.  (Dkt. No. 28 at 25.)  Defendant argues "each time [Defendant]

20 reported information on a credit report is not a new standalone violation because the entire claim

21 is based on the initial 'erroneous' reporting of the Bank of Missouri's account status as closed."

22 (Dkt. No. 36 at 3.)

23

24

1    Plaintiff has not provided legal authority supporting his position that each credit report

2    Defendant made available to Plaintiff on Defendant's website that contains the same error on the

3    same account constitutes a separate FCRA cause of action.[8]  (*See generally* Dkt. No. 28.)  All 40

4    credit reports mentioned in Plaintiff's Amended Complaint were dated between November 2019

5    and October 2020.  (*See* Dkt. No. 1-4 at 64.)  The Small Claims action began in August 2020 and

6    ended with a final judgment issued December 29, 2020.  (Dkt. No. 24-1 at 2, 6.)  Plaintiff could

7    have presented these reports during the first case but did not do so because he did not know he

8    could access them online at the time.  (*See* Dkt. No. 28 at 14.)

9    Plaintiff also claims Defendant committed standalone violations of 15 U.S.C.

10    § 1681i(a)(1)(A) not previously litigated because he alleges to have disputed the inaccuracy on

11    nine occasions, but in the Small Claims action he alleged only four disputes.  "Federal courts are

12    split on the question of whether each separate notice of dispute triggers a duty to investigate even

13    if the information has been disputed previously."  *Vasquez v. Bank of Am., N.A.*, No. 15-CV-

14    04072-RS, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015) (listing cases).  Most district

15    courts have held each separate dispute triggers a duty to investigate the disputed information

16    even if the information was previously disputed.  *Id.*  Even if this Court follows the majority of

17    district courts, and Plaintiff alleges some new violations of 15 U.S.C. § 1681i(a)(1)(A) for failing

18    to reinvestigate, his claims share a common nucleus of fact for those disputes already litigated.  It

19    is unclear from the pleadings which four disputes Plaintiff already litigated and Plaintiff does not

20

21    _____

22    [8] The Fifth Circuit Court has held "each transmission of the same credit report is a separate and
distinct tort to which a separate statute of limitations applies."  *Hyde v. Hibernia Nat. Bank in*

22    *Jefferson Parish*, 861 F.2d 446, 450 (5th Cir. 1988).  However, *Hyde* is not authority in the Ninth

23    Circuit, and it addressed the issue of whether the statute of limitations necessarily began when
the consumer learned of the inaccuracy on the first report while this case does not involve statute

24    of limitations issues.

clarify.  Regardless, all disputes occurred over the same general time frame already litigated in the Small Claims action.  Each of Plaintiff's disputes concerned the same account and the same error, therefore, each arose out of a common nucleus of fact and should have been litigated in the prior action.  *See Hadley v. Cowan*, 804 P.2d 1271, 1276 (Wash. Ct. App. 1991) (finding the plaintiff's allegations were of a single transactional nucleus of facts because the damages resulted form substantially the same conduct, which was "intimately related in time, origin, and motivation" such that the claims "would have constituted a convenient trial unit in the . . . proceeding.").

Accordingly, the *Rains* considerations support identity of causes of action.  The prior judgement established Defendant was not liable under the FCRA because it concluded the Bank of Missouri was at fault for the misinformation Defendant allegedly reported.  Thus, allowing prosecution of the current action would destroy or impair Defendant's previously adjudicated interests related to Bank of Missouri's alleged actions.

Secondly, substantially the same evidence was and would be presented in the two actions. Although Plaintiff provides more credit reports, these act as examples to bolster his claims, which could have been presented in the first case had Plaintiff investigated all documents available online.  Plaintiff also claims to have new evidence showing the Bank of Missouri correctly reported his account status that would contradict the previous decision, which found the Bank of Missouri responsible for incorrectly reporting Plaintiff's account status to Defendant. Plaintiff argues he should be able to present this evidence in a new case because he lacked access to the evidence given that he had to participate in mandatory arbitration with the Bank commencing January 5, 2021.  (Dkt. Nos. 1-4 at 46; 28 at 18.)  Defendant argues "[a]t any point prior to or during the [Small Claims court action], Plaintiff could have subpoenaed documents

1    from the Bank of Missouri regarding his account to use [against Defendant,]" therefore, "[a]t any

2    time during the pendency of the [first case], Plaintiff had access to the evidence he now wants to

3    use." (Dkt. No. 36 at 7.)  While the Court understands Plaintiff's frustration, his failure to secure

4    this evidence in the Small Claims Court despite its existence at the time, does not overcome the

5    preclusive effect of the first proceeding.

6          The two suits involve infringement of the same right.  In both cases, Plaintiff alleges he

7    suffered injury because Defendant committed FCRA violations of 15 U.S.C. § 1681i(a)(1)(A)

8    and 15 U.S.C. § 1681e(b).  Further, the violations all arise out of the same transactional nucleus

9    of facts.  Therefore, there is identity of claims and Plaintiff's case is precluded.

10         **E.  Plaintiff's Other Arguments Against Res Judicata Are Unavailing**

11         Plaintiff claims the judge in the Small Claims Court case was impaired.  Specifically, he

12   "believes that the judge's impaired cognitive abilities created his inability to formulate the

13   necessary conclusions, and correctly analyze the written discourse presented at trial" because

14   "the judge's hands shook uncontrollably—signs of Parkinson's disease." (Dkt. No. 1-4 at 13.)

15   The Court does not find this claim relevant to its res judicata analysis and to the extent it is

16   relevant, Plaintiff has not provided a plausible basis to find the judge was impaired as his claim

17   of shaking hands does not provide logical support for a cognitive impairment.

18         Plaintiff argues his claims should not be barred because they were not ripe during the first

19   action as the credit reports were unavailable during the first trial.  As discussed above, Plaintiff's

20   lack of awareness of how to access these reports does not mean they were unavailable

21   throughout the Small Claims case.  Accordingly, Plaintiff's claims were not unripe when he first

22   sued Defendant.

23

24

1        Plaintiff argues his case falls under the doctrine of continuing wrongs.  (Dkt. No. 28 at 4.)

2 "When a tort involves continuing wrongful conduct, the statute of limitations doesn't begin to

3 run until that conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002).  This

4 doctrine applies if "there is 'no single incident' that can 'fairly or realistically be identified as the

5 cause of significant harm.'"  *Id.*  Defendant is not arguing Plaintiff's claims are precluded by the

6 statute of limitations.  Further, Plaintiff is not arguing continuing conduct given he concedes

7 Defendant began correctly reporting his Bank of Missouri account on November 20, 2020.  (*See*

8 Dkt. No. 1-4 at 57.)  The doctrine of continuing wrongs does not apply.

9        Finally, throughout his Amended Complaint and Response to Defendant's Motion for

10 Judgment on the Pleadings, Plaintiff argues the prior judgment was incorrectly decided and if the

11 Court reviews all of his evidence, it will find his allegations proven against Defendant.

12 However, this type of argument is not relevant to whether the judgment has preclusive effect.

13 This case is not an appeal—Plaintiff is seeking to file an entirely separate action.

14     **F.  Amending Plaintiff's Complaint is Futile**

15        After Defendant moved for judgment on the pleadings, Plaintiff filed a document styled

16 "Second Amended Complaint."  (Dkt. No. 27.)  Under Federal Rule of Civil Procedure 15(a), a

17 party may amend it pleading 21 days after serving it, or it may amend with the opposing party's

18 written consent or the court's leave.  Plaintiff sought to amend his Complaint for a second time,

19 in July 2022, several months after he first filed suit and did not obtain written consent from

20 Defendant.  (*See generally id.*)  Plaintiff's proposed Second Amended Complaint states, Plaintiff

21 "respectfully asks the Court for leave to file a second amended complaint for damages."  (*Id.* at

22 1.)  The Court therefore construes this to be a Motion for Leave to File a Second Amended

23 Complaint, which it denies.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Court recognizes that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).  But courts may deny a motion to amend based on futility.  *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).  Amendment is futile if it is clear the complaint cannot be saved by amendment.  *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011).

In this case, Plaintiff has already amended his complaint while the matter was in state court.  The key differences presented in Plaintiff's proposed Second Amended Complaint are that Plaintiff alleges he possesses 70 inaccurate credit reports from within the same timeframe as the 40 reports he raises in his Amended Complaint, Plaintiff does not allege to have disputed the account on July 12, 2020, and Plaintiff seeks $1,032,000 in damages.  Plaintiff's proposed Second Amended Complaint does not impact the Court's analysis as it does not present new facts pertinent to res judicata.  The proposed Second Amended Complaint alleges the same two causes of action, as well as the same material facts.  (*See generally* Dkt. Nos. 1-4; 27.)

Plaintiff's proposed Second Amended Complaint includes an argument that res judicata is "[a]n assailable, indefensible defense," but Plaintiff's arguments were already discussed in Plaintiff's response to Defendant's Motion for Judgment on the Pleadings.  (*See* Dkt. No. 27 at 30) (Plaintiff acknowledges "[t]he Court should review . . . his brief in opposition to Defendant's motion for judgment on the pleadings" but seeks to emphasize his points "with a touch of redundancy to make Plaintiff's assertions more memorable.").  Plaintiff also requests additional damages, which are not relevant to the discussion of claim preclusion, because Plaintiff is merely seeking a greater award of damages arising out of the same claims.  (*See id.* at 6–11.)   The Court DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. No. 27)

and does not grant leave to amend because amendment is futile.  Accordingly, the Court also DENIES Plaintiff leave to file a Second Amended Prayer for Relief.  (Dkt. No. 45.)

### G.  Outstanding Motions

Because the Court grants Defendant's Motion for Judgment on the Pleadings (Dkt. No. 24), the remaining outstanding motions are moot.  Accordingly, the Court DENIES as moot Plaintiff's Motion for Summary Judgment (Dkt. No. 11), Motion for Leave to Admit Additional Exhibits (Dkt. No. 22), Motions for Leave to File Over-Length Brief and a Special Opposition Brief (Dkt. Nos. 39, 40), and Motion to Compel Discovery (Dkt. No. 46).

### H.  CONCLUSION

Accordingly, and having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 24) is GRANTED.

1. Plaintiff's claims are DISMISSED with prejudice and without leave to amend.

2. Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. No. 27) is DENIED.

3. Plaintiff's Surreply (Dkt. No. 38) is STRICKEN from the record.

4. Plaintiff's Motion for Summary Judgment (Dkt. No. 11), Motion for Leave to Admit Additional Exhibits (Dkt. No. 22), Motions for Leave to File Over-Length Brief and a Special Opposition Brief (Dkt. Nos. 39, 40), and Motion to Compel Discovery (Dkt. No. 46) are DENIED as moot.

Dated this 20th day of January, 2023.

David G. Estudillo
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS - 17